IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Jerome Mathis, | ) | Civil Action No. 3:17-cv-3094-TLW-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Interstate Contract Cleaning Services, Inc.; Scott Turner; and Kimberly Durden, | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' motion to dismiss (doc. 23) and the plaintiff's motion for judgment (doc. 27). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

### ALLEGATIONS AND PROCEDURAL HISTORY

In his complaint filed November 15, 2017, the plaintiff, who is proceeding *pro se*, listed both federal question and diversity of citizenship as the bases for federal court jurisdiction (doc. 1 at 3). He listed Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act ("ADA") as the statutes at issue in this case against his former employer, defendant Interstate Contract Cleaning Services, Inc. ("ICCS"), and two individual defendants, Scott Turner and Kimberly Durden (*id.*). He alleged that "for 15 mos. these Defendants took money out of my check and paid into the account of someone else" (*id.*). He claimed that he was injured on the job and sought medical attention through Human Resources and was "cursed out," accused of telling a lie, and "threatened with police" (*id.*). The plaintiff alleged that negligence concerning his injuries caused him "psychological, financial, and physical harm, hardship and humiliation" (*id.* at 5). In his

statement of the claim, the plaintiff alleged that, from September 15, 2015, to the present, "Scott Turner told me that Ken and Frank did my job before I was hired. He told me that he would hire someone to assist me. I was dependant [on] the job, and Ken and Frank were white males. I did not know about my duties were eventualy intale [sic] me to push a 15,000-lb up this 20° slope, but ICCS, Scott Turner, Ken Cray, and Frank Dedmon, did" (*id.*). The plaintiff requested relief in the amount of $10,000, plus $75,000 for "punitive and exemplary" damages for "pain and suffering" (*id.*).

On November 28, 2017, the undersigned entered an order granting the plaintiff's motion for leave to proceed *in forma pauperis* and providing him 21 days to file an employment discrimination complaint (doc. 8). On December 13, 2017, the plaintiff filed the employment discrimination complaint (doc. 1-2). In the discrimination complaint, the plaintiff stated that this action was brought pursuant to Title VII and the ADA (doc. 1-2 at 3) and further stated that the defendants discriminated against him because of his race ("Black American"), color ("Brown"), gender ("Male"), age (born in 1955),[1] and an unspecified disability (*id.* at 5). The plaintiff alleged that on September 15, 2015, and in July 2016 and December 2017, the defendants discriminated against him by terminating his employment, by failing to accommodate his disability, through unequal terms and conditions of his employment, and by retaliating against him (doc. 1-2 at 4). The plaintiff also alleged that the defendants discriminated against him by accusing him of lying "of even being employee paid my taxes to someone else" (*id.*). He alleged that he was injured at work, he requested help, and "the Company faught [sic], causing attention to be delayed or done without" (*id.* at 5). He claimed that he was injured physically and financially, and requested relief in the amount of $10,000 in actual damages and $75,000 in punitive damages (*id.* at 5-6).

The plaintiff provided further details regarding his claim, as follows:

---

[1] The plaintiff did not check the box for violation of the Age Discrimination in Employment Act ("ADEA") in his discrimination complaint, but he alleged that the defendants discriminated against him based on his age (doc. 1-2 at 3, 5).

2

> It was promiced [sic] to me from day #1, that the company would hire someone to assist me on the job but they never did. I was injured back i[n] June, where from a fall that knocked out a[] tooth, and lied to by Turner. He would report it to Human Resources so damage could be repaired. He lied up until they lost the contract in Dec. 2016. They lost the contract due to no fault of mine, I had been required to push a 15 hundred pound container up a 20° incline for 35 or 40 yards after the accident, with no help. It was do it or lost [sic] my job. 12-20-16 when I had to seek med. Attention for my back they lost the contract, leaving me with a strained back and injured mouth. Then Scott Turner gives me Kimberly Durden['s] number to call for myself, she cursed me out, and told me that I never worked for her co[mpany]. They had for 15 mos. taken money out of my check and put in some other persons [sic] account. 8-16-17 they made an offer in WCC hearing, but it was not enough for repair. The[y] claimed the accident did not happen on the job, and dared me to prove it. I have a document from the on site supervisor, Ken Cray statement that it was reported to him. Due to the IRS, state, unemployme[nt] an[d] SSA, what would have happen[ed] if I had died. I replied that I would sue them for illegal employment practices.

(*Id.* at 8).

The plaintiff submitted several attachments to his discrimination complaint, including a dismissal and notice of rights from the United States Equal Employment Opportunity Commission ("EEOC") dated November 2, 2017 (docs. 1-1, 1-3); an undated settlement demand letter from an attorney at South Carolina Legal Services on the plaintiff's behalf (doc. 1-4 at 1); a letter from the plaintiff to defendant ICCS dated December 27, 2016, describing the plaintiff's alleged workplace injury (*id.* at 2-3); a handwritten letter from Ken Cray, an employee at 650 Lincoln, dated August 3, 2017, describing the plaintiff's alleged workplace injury (*id.* at 4); and a letter of recommendation regarding the plaintiff, whom she described as an employee of a vendor, from Mary Beth Gomez, Property Manager at 650 Lincoln, dated December 21, 2016 (*id.* at 5).

The discrimination complaint was docketed by the Clerk of Court as an attachment to the original complaint (*see* doc. 1). Accordingly, these documents will hereafter be referred to cumulatively as "the original complaint."

3

On January 16, 2018, the court entered an order directing the Clerk of Court to issue the summons and to forward copies of the summons and original complaint to the United States Marshals Service ("USMS") for service of process, to be effected within 90 days (doc. 14 at 1). The order advised the plaintiff that he was "responsible for providing information sufficient to identify the defendants on Form USM-285" and that if "the information provided by the plaintiff on the Form USM-285 is not sufficient for the Marshal to effect service of process, after reasonable investigative efforts have been made to locate a properly identified [] defendant, the Marshal should so note in the 'Remarks' section at the bottom of the Form USM-285" (*id.* at 2). The Clerk of Court issued the summons on January 16, 2018 (doc. 16), and the USMS served the summons, original complaint, and all three Forms USM-285 on February 13, 2018, to Mabelle Spence ("Spence"), ICCS's Director of Human Resources, at ICCS's corporate offices located at 509 Blair Hill Road, Charlotte, North Carolina 28217, based on the information provided by the plaintiff (doc. 18).

On March 2, 2018, counsel for the defendants filed a motion to extend the time to answer or otherwise plead (doc. 19), which the undersigned granted, extending the deadline to respond to the plaintiff's complaint through March 27, 2018 (doc. 20). The defendants filed a motion to dismiss on March 27, 2018 (doc. 23). By order filed March 28, 2018, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the procedures for motions to dismiss and for summary judgment and the possible consequences if he failed to respond adequately to the defendants' motion (doc. 26). On March 29, 2018, the plaintiff filed a motion for judgment (doc. 27), to which the defendants filed a response on April 2, 2018 (doc. 33).   The plaintiff filed a response in opposition to the defendants' motion to dismiss, along with additional "supporting documents," on April 2, 2018 (doc. 35).  The defendants filed a reply on April 3, 2018 (doc. 37).  On April 10, 2018, the plaintiff filed a second response to the defendants' motion to dismiss, along with additional "supporting documents" (doc. 39). The plaintiff filed a reply to the defendants' response to his motion for judgment on April 17, 2018 (doc. 48), and he

4

filed a third response in opposition to the defendants' motion to dismiss, along with additional "supporting documents," on April 20, 2018 (doc. 42).

On June 19, 2018, the undersigned issued an order finding that the plaintiff's complaint failed to state a claim upon which relief can be granted against the defendants under Title VII, the ADEA, and the ADA ; to the extent the plaintiff alleged state tort claims against the defendants seeking damages for his alleged workplace injury, such claims were precluded by the exclusivity provision of the South Carolina Workers Compensation Act; and the plaintiff had failed to effect proper service of process on individual defendants Turner and Durden (doc. 50). The undersigned gave the plaintiff an opportunity to cure the defects by filing an amended complaint and proof of appropriate service of the summons and complaint on defendants Durden and Turner by July 3, 2018.  The plaintiff was specifically warned that if he failed to file an amended complaint or failed to cure the deficiencies identified in the order, the undersigned would recommend to the district court that the defendants' motion to dismiss for failure to state a claim be granted, that the plaintiff's motion for judgment be denied, and that this action be dismissed *with prejudice* and without leave for further amendment. *See Workman v. Morrison Healthcare*, No. 17-7621, 2018 WL 2472069, at *1 (4th Cir. June 4, 2018) (in a case where the district court had already afforded the plaintiff an opportunity to amend, directing the district court on remand to "in its discretion, either afford [the plaintiff] another opportunity to file an amended complaint or dismiss the complaint with prejudice, thereby rendering the dismissal order a final, appealable order") (citing *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 630 (4th Cir. 2015)).

On June 28, 2018, the plaintiff filed an amended complaint (doc. 54) and a letter regarding proper service on the defendants (doc. 55). In his amended complaint, the plaintiff listed only diversity of citizenship as the basis for federal court jurisdiction (doc. 54 at 3). He alleged that when he was hired by defendant ICCS, defendant Turner, who was defendant ICCS's Project Coordinator, tried to get him to provide someone else's Social Security number because he knew that the plaintiff had a disability, and Turner told the

plaintiff that he could make more money than the Social Security Administration would allow by providing someone else's Social Security number (*id.* at 7). He claimed that the amount in controversy is $170,000.00 because defendant ICCS "retained these malicious employees, that no more than set out to kill me after I was hired because I would not commit crime" (*id.*). The plaintiff further alleged that he refused, and then Turner began trying to hurt him by encouraging him to smoke crack (*id.* at 8). The plaintiff claimed that he had "to work harder than about 15 people," and Turner "promised to hire someone to help [him] with the trash and he never did" (*id.*). The plaintiff further alleged that a supervisor suggested that he talk to defendant Turner so that Turner could help him "beat the system" (*id.*). He claimed that he was "injured at [his] work station, and [he] found out that 2 bolts had been removed from the compressors hood that [he] stood on" (*id.* at 9). He alleged that the fall injured him in "places that [he] did not even realize at the time," and when he went to defendant Durden, who was defendant ICCS's Human Resources Manager, to see if he could get assistance, he was cursed at and threatened (*id.* at 10). He claimed that when he filed his taxes, he found out there was "not a dime in [his] account" and that defendant Turner had "worked [him] under a phony Social Security number" (*id.*). The plaintiff alleged that when he called the Social Security Administration, since they did not know he was working, "the first thing they wanted to do was cut [him] off" (*id.* at 10-11). For the reasons set forth below, the undersigned finds that the amended complaint fails to cure the defects identified in the plaintiff's original complaint, and, therefore, this case should be dismissed *with prejudice*.

**APPLICABLE LAW AND ANALYSIS**

***South Carolina Workers' Compensation Act Exclusivity***

In their motion to dismiss, the defendants first argue that the plaintiff's allegations focus on his alleged workplace injury, and his request for compensation for such injury is precluded by the exclusivity provision of the South Carolina Workers' Compensation Act ("the Act"). The undersigned agrees.

The Act provides in pertinent part:

6

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee . . . as against his employer, at common law or otherwise, on account of such injury, loss of service or death. . . .

S.C. Code Ann. § 42-1-540. The Act defines "personal injury" as "injury by accident arising out of and in the course of employment." *Id.* § 42-1-160(A).

Based on this provision, South Carolina courts have held that the Act provides the exclusive remedy against an employer for an employee who sustains injuries arising out of his employment. *See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002) ("Because [the plaintiff's] claims, as employee of University, arose out of and in the course of her employment, the Workers' Compensation Act provides the exclusive remedy for her."). The only exceptions to the Act's exclusivity provision are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 n.2 (S.C. 2002) (citations omitted).

Both federal and state courts in South Carolina have granted motions to dismiss state tort law claims by an employee against his employer for injury as preempted by the Act. *See, e.g., Kerr v. Hammond Sch.*, C.A. No. 3:17-3109-JFA-KFM, 2018 WL 1737090, at *2-4 (D.S.C. Apr. 11, 2018) (dismissing claim for negligent supervision based on the Act's exclusivity provision)*; Sabb*, 567 S.E.2d at 234 (citation omitted) (noting plaintiff's claims against employer for negligent supervision and retention of a co-employee were covered by the Act); *Dickert*, 428 S.E.2d at 701 (finding that assault, battery, intentional infliction of emotional distress/outrage, invasion of privacy, and negligence claims asserted by an employee against his employer were precluded by the Act). Moreover, a co-employee who negligently injures another employee while in the scope of employment

7

is immune under the Act and cannot be held personally liable. *Dickert*, 428 S.E.2d at 702 (citing *Nolan v. Daley*,73 S.E.2d 449 (S.C. 1952)). However, this immunity is not extended to a co-employee who commits an intentional tortious act upon another employee. *Id.* The Honorable Cameron McGowan Currie, Senior United States District Judge, recently stated in *Sibert v. Raycom Media, Inc.*:

> The intentional injury exception to § 42-1-540 has been construed quite narrowly. Liability cannot "be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct ... short of a conscious and deliberate intent directed to the purpose of inflicting an injury." Even actions such as "knowingly ordering employees to perform an extremely dangerous job," or "refusing to respond to an employee's medical needs and restrictions" fail to rise to the level "of the kind of actual intention to injure that robs the injury of accidental character."
>
> > [W]hat is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus the accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the word, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

C.A. No. 3:17-1544-CMC, 2017 WL 3721238, at *3 (D.S.C. Aug. 29, 2017) (quoting *Edens v. Bellini*, 597 S.E.2d 863, 870-71 (S.C. Ct. App. 2004)).

The plaintiff has failed to cure the deficiencies in his original complaint that were identified in the June 19th order (doc. 50). Here, in his amended complaint, the plaintiff has made no allegation that the individual defendants are the "alter egos" of ICCS. Moreover, the plaintiff identifies defendant Turner as the Project Coordinator and defendant Durden as the Human Resource Manager (doc. 54 at 2-3), and, as noted by the defendants, under South Carolina law, supervisory employees are not the alter egos of the employer. *See Dickert*, 428 S.E.2d at 701. Furthermore, the plaintiff has failed to allege facts inferring

8

that the defendant employer or the individual defendants acted with a deliberate or specific intent to injure him such that the Act's exclusivity provision may be avoided.  As noted above, "[e]ven actions such as 'knowingly ordering employees to perform an extremely dangerous job,' or 'refusing to respond to an employee's medical needs and restrictions' fail to rise to the level 'of the kind of actual intention to injure that robs the injury of accidental character.'" *Sibert*, 2017 WL 3721238, at *3 (quoting *Edens*, 597 S.E.2d at 870-71). Assuming the facts alleged by the plaintiff to be true, unknown persons removed bolts from a piece of equipment that the plaintiff then stood on while performing his job, which caused him to fall and injure himself (doc. 54 at 9-10).  The plaintiff thereafter filed a claim for his alleged workplace injury with the South Carolina Workers' Compensation Commission (doc. 3 at 2).  Here, as in his original complaint, the plaintiff is apparently seeking damages for the injuries he suffered in the incident (*see* doc. 54 at 7, 9). As the Act provides the exclusive remedy for the plaintiff's injury by accident arising in the course of his employment, his state tort law claims against the defendants are precluded by the exclusivity provision of the Act.

### Failure to State a Claim

The defendants next argue that the plaintiff has failed to plead facts sufficient to state a cause of action for violation of Title VII, the ADA, or the ADEA.  The undersigned agrees.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550

U.S. at 555, 569).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The court must liberally construe *pro se* complaints to allow the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and such *pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

Title VII makes it "an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

As set out above, in his original complaint, the plaintiff alleged that the defendants discriminated against him based on his race, color, gender, age, and unspecified disability (docs. 1, 1-2).  As the undersigned explained in the June 19th order, beyond asserting that he is a member of various protected categories, the plaintiff did not allege any facts in his original complaint that would support a claim for discrimination under Title VII, the ADEA, and the ADA.  In his amended complaint, the plaintiff did not assert any basis for federal question jurisdiction (doc. 54 at 3), and he made no allegation of discrimination based upon any protected category (*see generally id.* at 1-11). However, it does not appear that the plaintiff has completely abandoned his federal discrimination claims because he stated as follows in a letter filed with his amended complaint:

> Now in the amended complaint form application, all I really had
> was an option to answer some questions and an opportunity to
> tell what my disability is and say what some people had put me
> through and like I am saying to right now.  That is all because
> I am black and a male with a disability and am of a certain age.

(Doc. 55). In his amended complaint, the plaintiff has failed to cure the deficiencies identified in this court's previous order.  Again, the plaintiff has failed to provide sufficient facts to raise a right to relief above the speculative level or to state a claim to relief that is plausible on its face under Title VII, the ADEA, and the ADA.

As the court further explained in the June 19th order, any Title VII, ADEA, and ADA claims alleged against the individual defendants are precluded by decisions of the United States Court of Appeals for the Fourth Circuit holding that those statutes do not provide for individual liability. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999) (ADA); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (Title VII); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir. 1994) (ADEA).  Based upon the foregoing, the Title VII, ADEA, and ADA claims against all defendants should be dismissed for failure to state a claim upon which relief can be granted.

### *Insufficient Service of Process*

As an alternative ground for dismissal, individual defendants Turner and Durden argue that the plaintiff has failed to effect proper service of process on them. The undersigned agrees.

As explained in the June 19th order (doc. 50 at 9-11), this court may exercise jurisdiction over individual defendants only if there is valid service of process upon them. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys.*, 733 F.2d 1087, 1089 (4th Cir. 1984). An individual may be properly served by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or

where service is made[2]; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e) (2018). Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* 4(m) (noting that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").

*In forma pauperis* plaintiffs, like the plaintiff here, "must rely on the district court and the USMS to effect service and should not be penalized for delay in service beyond their control." *Scott v. Md. State Dep't of Lab.*, 673 F. App'x 299, 305 (4th Cir. 2016) (citation and internal quotation marks omitted). However, it is the plaintiff's responsibility to provide proper addresses for service. *Id.* (citation omitted). As set forth above, the plaintiff provided the USMS with ICCS's corporate address, 509 Blair Hill Road, Charlotte, North Carolina 28217, for service of process on all three defendants (doc. 18). However, service on the individual defendants, Turner and Durden, was improper because it did not meet the

---

[2] The South Carolina Rules of Civil Procedure track Federal Rule 4(e) and allow service of process upon an individual "by delivering a copy of the summons and complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy to an agent authorized by appointment or by law to receive service of process." Rule 4(d)(1), SCRCP. Additionally, the South Carolina Rules of Civil Procedure provide for service: (1) in the manner prescribed by statute; (2) by registered or certified mail, return receipt requested and delivery restricted to the addressee; or (3) by a commercial delivery service. Rule 4(d)(7)-(9), SCRCP. The North Carolina Rules of Civil Procedure also track Federal Rule 4(e) and additionally allow service of process on an individual as follows: (1) "By mailing a copy of the summons and complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee"; (2) "By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt"; or (3) "By mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee." N.C. R. Civ. P. 4(j)(1).

requirements of Rule 4(e), as described above. While Turner is still employed by ICCS, he is being sued in his individual capacity and, therefore, must be served pursuant to Rule 4(e). Additionally, Durden is no longer employed by ICCS, which Spence explained to the USMS on February 13, 2018. The 90-day period for service of process began on the date the summons was issued, January 16, 2018, and therefore expired on April 16, 2018 (docs. 14, 16).

A defendant may challenge the sufficiency of service of process and seek dismissal of a case under Federal Rule of Civil Procedure 12(b)(5). Failure to properly serve the summons and complaint deprives the court of personal jurisdiction over a defendant. *See Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998). Further, "[a]ctual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a *pro se* plaintiff." *Scott*, 673 F. App'x at 305 (citing *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) ("Neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4."); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 24 (1st Cir. 1992) ("Although 'minor' formal defects are excusable provided actual notice has been accomplished, ... the rule nevertheless must be accorded at least substantial compliance.")).

As noted above, if a defendant is not served within the requisite time period, the court may order that service be made within a specified time rather than dismiss the case. *See* Fed. R. Civ. P. 4(m). Moreover, if the plaintiff shows good cause for the failure to serve, the court must extend the time for service for an appropriate period. *Id.* "'The plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4.' " *Ballard v. PNC Fin. Serv. Group, Inc.*, 620 F. Supp.2d 733, 735 (S.D.W.Va. 2009) (quoting *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003)).

In the June 19th order, the undersigned found that the plaintiff had failed to establish that defendants Turner and Durden have been served in accordance with the

13

requirements of Rule 4.  Accordingly, the plaintiff was given until July 3, 2018, to file proof of appropriate service of the summons and complaint on defendants Durden and Turner or, alternatively, to show good cause for his failure to properly serve these defendants.  The plaintiff was specifically warned that failure to file proof of service or show good cause by that date would result in this court's recommendation that defendant Durden and Turner be dismissed from this action pursuant to Rules 4(m) and 12(b)(5).

On June 28, 2018, the plaintiff filed a letter, stating: "Proper service, to the defendants.  I want you to know that I will be delivering this statement along with the amended complaint to the clerks office today, where you and their attorneys will get the information, which is what you asked me to do" (doc. 55 at 1).  On the amended complaint form, the plaintiff gave defense counsel's address as the addresses of defendants Turner and Durden (doc. 54 at 2-3).  As the undersigned set out at length in the June 19th order, individual defendants must be served in accordance with Rule 4(e).  At no point has defense counsel stated that service would be accepted on behalf of defendants Turner and Durden.  The plaintiff has failed to provide the USMS with proper addresses for service of the summons and complaint, has failed to file proof of service, and has failed show good cause for his failure to properly serve these defendants.  Accordingly, in the alternative to the grounds for dismissal discussed above, defendants Turner and Durden should be dismissed from this action pursuant to Rules 4(m) and 12(b)(5).

## CONCLUSION AND RECOMMENDATION

By order filed June 19, 2018 (doc. 50), the undersigned gave the plaintiff an opportunity to correct the defects identified in his original complaint and further warned the plaintiff that if he failed to file an amended complaint or failed to cure the identified deficiencies, the undersigned would recommend to the district court that the action be dismissed *with prejudice* and without leave for further amendment.  As discussed herein, the plaintiff's amended complaint fails to correct the identified deficiencies and, like the original complaint, fails to state a claim upon which relief can be granted against the defendants. Accordingly, the district court should grant the defendants' motion to dismiss

for failure to state a claim (doc. 23), deny the plaintiff's motion for judgment (doc. 27), and dismiss this action *with prejudice* and without leave for further amendment. *See Workman*, 2018 WL 2472069, at *1 (in a case where the district court had already afforded the plaintiff an opportunity to amend, directing the district court on remand to "in its discretion, either afford [the plaintiff] another opportunity to file an amended complaint or dismiss the complaint with prejudice, thereby rendering the dismissal order a final, appealable order") (citing *Goode*, 807 F.3d at 630).

Furthermore, as an alternative ground for dismissal of the individual defendants, the plaintiff has failed to provide proper addresses for service of process on individual defendants Durden and Turner by the USMS within the extended time allowed by the undersigned.  Further, the plaintiff has failed to show good cause for his failure to properly serve these defendants. Accordingly, in the alternative, defendants Durden and Turner should be dismissed from this action pursuant to Rules 4(m) and 12(b)(5).

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

July 9, 2018
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).